UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| KERI WELLS, on Behalf of Herself and All Others Similarly Situated<br><br>                            Plaintiff<br><br>vs.<br><br>FIFTH THIRD BANK, INC.<br><br>                            Defendant | **CLASS ACTION COMPLAINT**<br><br>*JURY TRIAL DEMANDED* |

Plaintiff Keri Wells alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations:

## INTRODUCTION AND GENERAL ALLEGATIONS

1. This is an action for monetary damages, restitution, declaratory and injunctive relief against Defendant Fifth Third Bank ("Defendant" or "Fifth Third") for deceptive sales practices with respect to its "Identity Alert" product, which is an add-on to consumer checking accounts offered by the Bank.

2. Fifth Third is a state-chartered, federally insured bank with branches located throughout the United States, including North Carolina, Florida, Illinois, Indiana, Kentucky, Michigan, Ohio and Tennessee.

3. Fifth Third's "Identity Alert" ($9.95 per month) and "Identity Alert Premium" ($14.95 per month) products purportedly offer consumers protection against identify theft by monitoring credit reports for fraudulent new accounts and insurance in the event of identity theft.

4. Using deceptive sales practices and omissions, Fifth Third as a matter of course enrolls consumers in the more expensive "Premium" product without adequately disclosing the

{00377485.DOCX V. M011.011989;}

availability of the much less expensive regular Identity Alert product, and it misrepresents the characteristics and benefits of the "Premium" product in order to deceive consumers into enrolling in that service.

## PARTIES

5. Plaintiff Keri Wells is a citizen of Wake County, North Carolina.

6. Defendant Fifth Third Bank is a state-chartered, federally insured bank, headquartered in Ohio, with branches located in Florida, Illinois, Indiana, Kentucky, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, Tennessee and West Virginia.

## JURISDICTION AND VENUE

7. Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

8. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d)(2) and (6), as amended by the Class Action Fairness Act of 2005, because this matter was brought as a class action, the aggregate claims of the putative Class members exceed $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a different state than Fifth Third.

9. The Court has subject matter jurisdiction over Plaintiffs' claims arising under 12 U.S.C. § 1831(d), pursuant to 28 U.S.C. § 1331.

10. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because Plaintiffs' state law claims arise out of the same transaction or occurrence as their claims under 12 U.S.C. § 1831(d)—namely, Fifth Third's deceptive, misleading and fraudulent promotion and marketing of its Identity Alert Premium product.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Fifth Third is subject to personal jurisdiction here and regularly conducts business in this district.

{00377485.DOCX V. M011.011989;}   2

Additionally, a substantial part of the events or omissions giving rise to the claims asserted occurred and continue to occur in this district.

# FACTS

### Common Factual Allegations as to the Proposed Class and Plaintiff

A.  **Fifth Third's Identity Alert Products**

12. Fifth Third offers its Identity Alert products to its checking account customers residing in, *inter alia*, North Carolina, Ohio, Kentucky, Michigan, Illinois, Indiana, Tennessee, Missouri and Florida. A copy of Fifth Third's checking account agreement and addendum regarding Identity Alert is attached as Exhibit A.

13. Fifth Third Bank offers purported identity theft solutions called "Identity Alert" and "Identity Alert Premium." Identity Alert costs $9.95 per month and Identity Alert Premium $14.95 per month.

14. The products essentially provide credit monitoring to detect fraudulent account openings and provide insurance for limited reimbursements associated with curing an identity theft.

15. But identity theft experts say such services cannot protect from data breaches, criminal fraud, medical identity theft or fraudulent Social Security number use, which are among the most common forms of identity theft.

16. According to the Wall Street Journal, banks like Fifth Third have made an aggressive push to sign checking account customers up for identity theft protection services like Identity Alert: "The push is the latest attempt by banks to fill revenue gaps left by the recent regulatory limits on their traditional sources of income, including credit and debit cards and overdraft and interchange fees, says Jack Kaplan, Managing Director of Carret Asset Management LLC."

17. Also according to the Journal, "At Fifth Third, which has 2.5 million checking-account customers, nearly a third of its new customers enroll in the bank's Identity Alert service for up to $9.95 per month within the first 90 days of opening an account, says a bank spokesman." Banks, including Fifth Third, "are ramping up their marketing of protection packages through popup and banner ads on online banking websites, customer service pitches in branches, on the phone or in the mail."

18. The same article notes, however, that "Consumers can take steps on their own for little or no cost to protect themselves from—or at least quickly detect—attempts to steal their identity. Federal law permits consumers to access credit reports for free once a year from the national credit bureaus, Equifax, Experian and TransUnion, and some states mandate more frequent access."

19. According to Consumer Reports, "About 50 million U.S. consumers spent $3.5 billion in 2010 to buy products that are claimed to protect their identity. But do-it-yourself safeguards are just as effective as paid services[,]". Indeed, "The threat is exaggerated . . . Federal regulations limit your liability, usually to $50 per account, and even that is often waived by card issuers."

20. The core of products like Fifth Third's Identity Alert is credit monitoring. But according to Consumer Reports, "Credit monitoring is flawed. The core of many ID-protection products is credit monitoring, which looks for fraudulent new accounts on your credit reports. But most email and mobile alerts from those services raise false alarms about routine changes in your file. And if fraud is detected, you might not be 'warned' until days, weeks, or months after the fact."

21. Consumer Reports urges consumers to "Do it yourself for less. Get free annual credit reports from each of the three major credit-reporting bureaus—Equifax, Experian, and TransUnion—by going to annualcreditreport.com."

B. **Fifth Third's Misrepresentations About the Benefits of Identity Alert**

22. Fifth Third states that "Fifth Third Identity Theft Protection helps keep your personal information safe and **protects you from the major forms of identity theft**" (emphasis added). See Exhibit B (compendium of marketing brochure and notices and disclosures).

23. That is not true. According to Consumer Reports, "Two-thirds of cases of ID theft reported to the annual National Crime Victimization Survey involve stolen credit cards, not stolen identities...Add stolen debit cards and check forgery, and existing account fraud makes up 80 percent of so-called ID theft."

24. Because Identity Alert is essentially a credit monitoring product, and is therefore monitoring for fraudulent new account opening, it provides little or no protection against **existing account** identify theft, which accounts for up to 80% of identity fraud.

25. Indeed, "**New-account fraud is uncommon.** The most destructive type of ID theft is having your name, birth date, and Social Security number used to open credit accounts, tap your health insurance, or file a tax return in your name to steal your refund, among other crimes. But less than 1 percent of households experienced that form of ID theft in 2010, according to the Department of Justice."

26. In short, the core of Identity Alert—credit monitoring—is of dubious value in preventing or detecting the major forms of identity theft.

{00377485.DOCX V. M011.011989;}    5

Case 5:17-cv-00178-D    Document 1    Filed 04/13/17    Page 5 of 17

### C. Fifth Third's Misleading Representations about the Difference Between the Regular and "Premium" Products

27. For **$9.95** per month, Fifth Third sells regular Identity Alert to consumers with the promise of "protection from the major types of identity theft with automatic daily credit monitoring, tools to manage your credit scores, identity theft insurance, and more." The "Key Benefits" are "Single Bureau Daily Credit Monitoring, Monthly Triple Bureau Credit Reports & CreditXpert® Credit Scores, Social Security Monitoring, and Up to $25,000 Identity Theft Insurance." See Exhibit B.

28. For **$14.95** per month, Fifth Third sells Identity Alert Premium with promises of "peace of mind with our most comprehensive ID Theft Protection for you and your family, which includes enhanced credit monitoring, expanded insurance coverage and additional protection for your child's Social Security number."

29. The two key benefits touted by Fifth Third for the Premium service are insurance and even more credit monitoring—the latter of which is of dubious value in the first place.

30. "Key Benefits" of Identity Alert Premium are: Triple Bureau Daily Credit Monitoring, Monthly Triple Bureau Credit Reports & CreditXpert® Credit Scores, Social Security Number & Child's Social Security Number Monitoring, and Up to $1 Million Identity Theft Insurance."

31. The main difference between the two products is the significantly higher $1 million in "ID theft insurance." But this higher level of insurance is essentially worthless.

32. First, while many identity theft insurance policies in the marketplace cover unauthorized electronic funds transfers and other similar monetary losses, Fifth Third's protection does not. The insurance merely covers things like lost wages as a result of time taken off from work to deal with the fraud, notary and certified mailing costs for completing and

delivering fraud affidavits, loan re-application fees for loans which were declined due to erroneous credit information caused by the identity fraud, phone charges for calling merchants, financial institutions, and law enforcement agencies to discuss an actual identity fraud, and attorneys' fees incurred, with prior consent from the insurer, for defending suits brought incorrectly by merchants and their collection agencies.

33. In no possible world could a consumer incur $1,000,000 in these types of expenses.

34. As Consumer Reports states, "$1 million insurance is overkill. Most services offer up to $1 million in ID-theft insurance. But they don't pay if your loss is covered by federal consumer protections, your homeowners or renters insurance, or a merchant, which is the norm. The majority of ID-theft victims had zero out-of-pocket loss in 2011, according to Javelin. A minority did lose money—the average was $309 for existing-account fraud and $1,205 for new-account fraud."

35. By marketing the product as "Enjoy peace of mind with our most comprehensive ID Theft Protection for you and your family, which includes enhanced credit monitoring, **expanded insurance coverage**," Fifth Third wants consumers to believe it is to provide help with any actual losses—indeed, that is the only context in which $1million of coverage would make sense.

36. But there is no coverage for actual losses, and virtually no way to get close to $1 million in paid benefits, and that high amount of insurance actually provides no more peace of mind than the $25,000 in insurance offered by the normal Identity Alert product.

37. According to Consumer Reports, Affinion (which operates Fifth Third's Identity Alert products after they are sold by Fifth Third to consumers) offers a similar product through

American Express with similarly inflated promises of value: "Million-dollar insurance doesn't cover much. American Express ID Protect Premium, provided by Affinion, says its $16 monthly fee includes 'up to $1 million in identity theft insurance.' But ID-theft insurance is secondary to any other coverage that might pay out first, such as homeowner's or renter's insurance, and it mostly covers low-cost incidentals related to or resulting from the crime: notary fees, credit-report costs, loan re-application fees and a maximum of $1,500 in wages lost 'solely' to fix your identity records."

38. Fifth Third's marketing materials do not disclose, anywhere but in the fine print, that no monetary losses are covered. Indeed, they imply exactly the opposite when they tout "peace of mind."

39. Worse, the product is overpriced. The National Association of Insurance Commissioners says the typical cost of identity theft insurance ranges from $25 to $60 per year. The insurance may include credit alerts, account and credit monitoring, and reimbursement for the costs associated with repairing credit history.

40. Fifth Third's Identity Alert Premium product is significantly more expensive than this going rate.

41. Fifth Third fails to disclose the million-dollar insurance with Identity Alert Premium is virtually worthless and of no more real value than the insurance with regular Identity Alert. See Exhibit B (compendium of Notices & Terms).

{00377485.DOCX V. M011.011989;}    8

Case 5:17-cv-00178-D   Document 1   Filed 04/13/17   Page 8 of 17

### D. Fifth Third Automatically Enrolls Consumers in the More Expensive Premium Product Without Their Informed Consent

42. Fifth Third Bank, as a matter of corporate policy, enrolls consumers in the more expensive Identity Alert Premium Service—either without their informed consent (as occurred with Plaintiff) or by exploiting consumer misunderstanding about the protection the Premium service provides, including the value of the $1,000,000 in extra insurance.

43. Plaintiff Wells was enrolled in Identity Alert Premium when she visited a Fifth Third branch in 2014. Because during that time Plaintiff was interested in building her credit score in order to apply for a mortgage, Plaintiff was solely interested in monitoring her credit score. She had no interest in identity theft protection, or in identity theft insurance. However, she was automatically enrolled in the Premium product for $9.95 per month, after a discount attributable to the type of Fifth Third checking account she had.

44. Fifth Third did not tell Plaintiff Wells that a less expensive Identity Alert product was available.

45. Plaintiff Wells would not have enrolled in the Premium product had Fifth Third disclosed to her the regular Identity Alert product that would have been offered to her for $3.95 after discount based on her checking account status.

46. Fifth Third did not tell Plaintiff Wells and she did not know, that she could check her credit score by requesting free copies of her credit reports from the three major credit reporting agencies.

47. Plaintiff Wells would not have enrolled in either Identity Alert product had she been adequately informed of her ability to receive free credit scores.

48. Fifth Third did not tell Plaintiff Wells and she did not know that in the rare chance an identity theft occurred on existing checking or credit accounts, she would be protected by

{00377485.DOCX V. M011.011989;}   9

bank and credit issuer policies limiting or eliminating any liability.

49. Plaintiff Wells would not have enrolled in Identity Alert—and certainly not in Identity Alert Premium—if she had known that the vast bulk of the $9.95 per month fee was attributable to illusory benefits.

50. In addition, Plaintiff Wells did not know, because Fifth Third concealed and intentionally did not disclose it, that the $1 million in "identity theft insurance "was practically worthless.

51. Plaintiff Wells would not have enrolled in Identity Alert Premium if she had known that the vast bulk of the $9.95 per month fee was attributable to this illusory insurance benefit.

## CLASS ALLEGATIONS

### Class Definition

52. Pursuant to Federal Rules of Civil Procedure 23, Plaintiff seeks to certify a Class of all Fifth Third customers who purchased the Identity Alert Premium product.

53. The proposed Class is defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid for Identity Alert Premium (the "National Class").

> All persons in North Carolina who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid for Identity Alert Premium (the "North Carolina Sub-Class").

> Excluded from the Classes are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, and employees, and Plaintiff's counsel.

54. Plaintiff reserves the right to modify or amend the definitions of the Classes before the Court determines whether certification is appropriate.

55. Defendant subjected Plaintiff and Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendant's standard and undisputed business practice.

## Numerosity

56. Members of the Classes are so numerous that joinder of all members is impracticable. Defendant has numerous branches in various states and it is believed thousands of customers have paid for Identity Alert Premium. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendant.

## Commonality

57. There are numerous questions of law and fact that are common to Plaintiff's and Class Members' claims. These common questions predominate over any question that goes particularly to any individual member of the Classes. Among such common questions of law and fact are whether Fifth Third:

    a. Deceptively promoted and marketed the benefits of the Identity Alert Premium product.

    b. Fraudulently induced customers into receiving Identity Alert Premium.

    c. Was unjustly enriched through its sale of Identity Alert Premium policies and practices.

58. Other questions of law and fact common to the Classes include:

    a. The proper method or methods by which to measure damages.

    b. The injunctive and declaratory relief to which Class members are entitled.

## Typicality

59. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Classes because of the similarity, uniformity and common purpose of the unlawful conduct

of Fifth Third. Each Class member has sustained and will continue to sustain damages in the same manner as Plaintiffs as a result of Defendant's wrongful conduct.

### Adequacy of Representation

60. Plaintiff is an adequate representative of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiff's claims stem from the same course of conduct as the other Class members and Plaintiff possesses no interests antagonistic to those of the other Class members. Additionally, Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature.

### Requirements of Fed. R. Civ. P. 23(b)(3)

61. The questions of law or fact common to Plaintiff's and the other Class Members' claims predominate over any question of law or fact affecting only individual members of the Classes. All claims by Plaintiff and the other Class Members are based on Fifth Third's uniform misrepresentations and practices.

62. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

### Superiority

63. A class action is the superior mechanism to fairly and efficiently adjudicate this controversy because:

    a. Joinder of all Class members would create extreme hardship and inconvenience for the affected customers residing in various states;

    b. Individual claims by Class members are impractical, because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in

prosecuting and controlling separate actions, yet if the action is not prosecuted, Defendant will continue its wrongful actions;

    c.    There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

    d.    The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

    e.    Individual suits would not be cost effective or economically maintainable as individual actions; and

    f.    The action is manageable as a class action.

### Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

64.    Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

65.    Defendant has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

### FIRST CLAIM FOR RELIEF

### Fraudulent Inducement
### (On Behalf of the National Class)

66.    Plaintiff asserts a common law claim for fraudulent inducement.

67.    Defendant represented that Identity Alert Premium had benefits it either did not have or that were illusory, and failed to inform consumers that it offered a less expensive product that provided the same benefits in real terms.

68.    These representations and omissions were false and misleading.

69. Defendant knew that these representations and omissions were false and misleading.

70. Based upon these omissions and false representations made by Defendant with intent to deceive, and in reasonable reliance on them, Plaintiff was enrolled in Identity Alert Premium.

71. Defendant intended that Plaintiff and members of the Class would rely on their false representations and omissions and enroll into and pay a premium for Identity Alert Premium.

72. Defendant's misrepresentations and omissions were material to inducing the Plaintiff and members of the Class to enroll into and pay a premium for Identity Alert Premium.

73. As a direct and proximate result of Defendant's fraud, Plaintiff and members of the Class have suffered damages by paying more for Identity Alert Premium.

74. Defendant engaged in this conduct in the same way to all members of the Class, who reasonably relied thereon in similar fashion.

### SECOND CLAIM FOR RELIEF

**Unjust Enrichment**
**(On Behalf of the National Class)**

75. Plaintiff asserts, on behalf of herself and all similarly situated consumers subject to the Identity Alert Premium practices and loan policies described herein, a common law claim for unjust enrichment.

76. By means of Fifth Third's wrongful conduct alleged herein, Fifth Third knowingly provides Identity Alert Premium to Plaintiff and members of the Class that are unfair, unconscionable and oppressive.

77. Fifth Third knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Fifth Third acted with conscious disregard for the rights of Plaintiff and members of the Class.

78. As a result of Fifth Third's wrongful conduct as alleged herein, Fifth Third Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

79. Fifth Third's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

80. Under the common law doctrine of unjust enrichment, it is inequitable for Fifth Third to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of Identity Alert Premium on Plaintiff and members of the Class in an unfair, unconscionable and oppressive manner.

81. Fifth Third Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

82. The financial benefits derived by Fifth Third Bank rightfully belong to Plaintiff and members of the Class. Fifth Third Bank should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third Bank traceable to Plaintiff and the members of the Class.

83. Plaintiff and members of the Class have no adequate remedy at law.

# THIRD CLAIM FOR RELIEF

### North Carolina Unfair and Deceptive Trade Practices Act
### (On Behalf of the North Carolina Sub-Class)

84. The allegations of paragraphs 1 through 83 of the Complaint are realleged and incorporated herein by reference.

85. The acts undertaken by Fifth Third were unfair and deceptive.

86. The acts undertaken by Fifth Third were unethical, egregious, oppressive and unscrupulous in that Fifth Third knowingly deceived Plaintiff and the Class into purchasing the Identity Alert Premium through its marketing and promotion in its branch offices.

87. The statements and marketing by Fifth Third with respect to its efforts to induce customers to enroll into Identity Alert Premium were deceptive and had the capacity to deceive, and did in fact deceive, the Plaintiff.

88. The acts undertaken by Fifth Third were in or affecting commerce.

89. As a result of the unfair and deceptive acts undertaken by Fifth third, the Plaintiff and the Class have been damaged in an amount in excess of $5,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands a jury trial on all claims so triable and judgment as follows:

1. Declaring Fifth Third Bank's policies, practices and disclosures to be wrongful, unfair and unconscionable and providing appropriate injunctive relief;

2. Restitution of all Identity Alert Premium fees paid to Fifth Third Bank by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by Fifth Third Bank from its misconduct;

4. Actual damages in an amount according to proof;

5. Punitive and exemplary damages;

6. Pre-judgment interest at the maximum rate permitted by applicable law;

7. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

8. Judgment be entered in favor of the Plaintiff and the Class on the Third Claim for Relief in an amount to be proven at trial and that such recovery be trebled pursuant to N.C. Gen. Stat. § 75-16 and that the Plaintiff and the Class be awarded its attorneys' fees pursuant to N.C. Gen. Stat. § 75-16-1; and

9. Such other relief as this Court deems just and proper.

***TRIAL BY JURY IS HEREBY DEMANDED.***

    Respectfully submitted,

    s/ Keith J. Merritt
    KEITH J. MERRITT (N.C. Bar No. 17523)
    **HAMILTON STEPHENS STEELE**
    **& MARTIN, PLCC**
    201 South College Street, Suite 2020
    Charlotte, NC 28244
    (704) 344-1117
    (704) 344-1483 (FAX)
    *Kmerritt@lawhssm.com*

    ***Counsel for Plaintiff and the Proposed Class***